

**U.S. Department of Justice**

United States Attorney
Southern District of West Virginia

Robert C. Byrd United States Courthouse        Mailing Address
300 Virginia Street, East, Suite 4000           Post Office Box 1713
Charleston, WV 25301                            Charleston, WV 25326-1713
FAX: (304) 347-5104                             (304) 345-2200
                                                1-800-659-8726

July 16, 2009

FILED
DEC 1 5 2009
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

Mary Lou Newberger
Federal Public Defender
300 Virginia Street
Charleston, WV    25301

    Re:   United States v. Angella Muthoni Chegge-Kraszeski
         Criminal No. 2:09-00132

Dear Ms. Newberger:

    This will confirm our conversations with regard to your client, Angella Muthoni Chegge-Kraszeski (hereinafter "Ms. Chegge-Kraszeski"). As a result of these conversations, it is agreed by and between the United States and Ms. Chegge-Kraszeski as follows:

    1.   **PENDING CHARGES**. Ms. Chegge-Kraszeski is charged in a single count indictment with a violation of 18 United States Code, Section 1956(h) (conspiracy to engage in illegal monetary transactions).

    2.   **RESOLUTION OF CHARGES**. Ms. Chegge-Kraszeski will plead guilty to said indictment, which charges her with a violation of 18 U.S.C. § 1956(h).

    3.   **MAXIMUM POTENTIAL PENALTY**. The maximum penalty to which Mr. Chegge-Kraszeski will be exposed by virtue of this guilty plea is as follows:

    (a)   Imprisonment for a period of 10 years;

    (b)   A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)   A term of supervised release of 3 years;

    (d)   A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013;

*Ack*
_____
Defendant's
initials

Mary Lou Newberger
July 16, 2009
Page 2                              Re: Angella Muthoni Chegge-Kraszeski


(e) An order of restitution pursuant to 18 U.S.C. §§ 3663A and 3664, or as otherwise set forth in this plea agreement; and

(f) The loss of certain valuable civil rights, possible deportation or other loss of immigration status.

4. **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Ms. Chegge-Kraszeski will tender a check or money order to the Clerk of the United States District Court for $100, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Ms. Chegge-Kraszeski will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Ms. Chegge-Kraszeski fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Ms. Chegge-Kraszeski.

5. **RESTITUTION.** Notwithstanding the offense of conviction, Ms. Chegge-Kraszeski agrees that she owes restitution in an amount to be determined by the Court and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Ms. Chegge-Kraszeski further agrees as follows:

(a) Ms. Chegge-Kraszeski agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and testimony concerning assets upon request of the United States.

(b) Ms. Chegge-Kraszeski will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will return these completed forms to counsel

*Ack*
Defendant's initials

Mary Lou Newberger
July 16, 2009
Page 3                    Re: Angella Muthoni Chegge-Kraszeski

        for the United States within seven calendar days from the date of the signing of this plea agreement.

(c)   Ms. Chegge-Kraszeski agrees not to dispose of, transfer or otherwise encumber any real or personal property which she currently owns or in which she holds an interest.

(d)   Ms. Chegge-Kraszeski agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and interest she may have in and to such property, and waives her right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

(e)   Ms. Chegge-Kraszeski agrees not to appeal any order of the District Court imposing restitution unless the amount of restitution imposed exceeds $919,916. However, nothing in this provision is intended to preclude the Court from ordering Ms. Chegge-Kraszeski to pay a greater or lesser sum of restitution in accordance with law.

    6.   **PAYMENT OF MONETARY PENALTIES.** Ms. Chegge-Kraszeski agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Ms. Chegge-Kraszeski further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

    7.   **COOPERATION.** Ms. Chegge-Kraszeski will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony

                                                                        *Ack*
                                                                    Defendant's initials

Mary Lou Newberger
July 16, 2009
Page 4                           Re: Angella Muthoni Chegge-Kraszeski


upon request of the United States. In complying with this provision, Ms. Chegge-Kraszeski may have counsel present except when appearing before a grand jury.

 8. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Ms. Chegge-Kraszeski, nothing contained in any statement or testimony provided by her pursuant to this agreement, or any evidence developed therefrom, will be used against Ms. Chegge-Kraszeski, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

 9. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Ms. Chegge-Kraszeski for any violations of federal or state laws. The United States reserves the right to prosecute Ms. Chegge-Kraszeski for perjury or false statement if such a situation should occur pursuant to this agreement.

 10. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Ms. Chegge-Kraszeski stipulate and agree that the facts comprising the offense of conviction of 18 U.S.C. § 1956(h) upon which such indictment is based include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit A."

 Ms. Chegge-Kraszeski agrees that if she withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Ms. Chegge-Kraszeski, and she is subsequently tried on any of the charges in the ~~INFORMATION~~ Indictment, the United States may use and introduce the "Stipulation of Facts" in the United States case-in-chief, in cross-examination of Ms. Chegge-Kraszeski or of any of her witnesses, or in rebuttal of any testimony introduced by Ms. Chegge-Kraszeski or on her behalf. Ms. Chegge-Kraszeski knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right she has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the

_Ack_
Defendant's
initials

Mary Lou Newberger
July 16, 2009
Page 5                          Re: Angella Muthoni Chegge-Kraszeski


defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Ms. Chegge-Kraszeski understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Ms. Chegge-Kraszeski agree that the following provisions of the United States Sentencing Guidelines apply to this case:

Title 18 United States Code § 1956(h)

USSG §2S1.1

Base offense level (USSG §2S1.1(a)(1) references the offense level for underlying offense from which the laundered funds were derived. Ms. Chegge-Kraszeski agrees that she was involved in the commission of the underlying offense. An underlying offense in this case is wire fraud, which offense is covered under USSG §2B1.1):

| | |
|---|---|
| USSG §2B1.1(a)(1) (stat. max. 20 years+) | 7 |
| USSG §2B1.1(b)(1)(H) (intended loss greater than $2.5 million) | + 18 |
| USSG §2B1.1(b)(9)(B) (substantial part of scheme committed from outside of U.S.) | + 2 |
| USSG §2S1.1(b)(2)(B) (conviction under 18 U.S.C. § 1956(h)) | + 2 |
| Adjusted Offense Level | 29 |

There is no agreement between the United States and Ms. Chegge-Kraszeski concerning the applicability of USSG §3B1.2

*Ack*
Defendant's initials

Mary Lou Newberger
July 16, 2009
Page 6                    Re: Angella Muthoni Chegge-Kraszeski


regarding Ms. Chegge-Kraszeski's role in the offense and Ms. Chegge-Kraszeski reserves the right to argue for a reduction of the adjusted offense level pursuant to USSG §3B1.2 for a mitigating role in the offense.

The United States and Ms. Chegge-Kraszeski acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

12. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** The parties reserve the right to appeal the District Court's determination of the adjusted offense level, prior to consideration of acceptance of responsibility, if the District Court's determination differs from that stated in paragraph 11. Nonetheless, Ms. Chegge-Kraszeski knowingly and voluntarily waives her right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is below or within the Sentencing Guideline range corresponding to offense level 29. The United States also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is within or above the Sentencing Guideline range corresponding to offense level 26.

Ms. Chegge-Kraszeski also knowingly and voluntarily waives the right to challenge her guilty plea and her conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

                                                    Ack
                                            _____
                                            Defendant's
                                            initials

Mary Lou Newberger
July 16, 2009
Page 7                          Re: Angella Muthoni Chegge-Kraszeski

    13. **WAIVER OF FOIA AND PRIVACY RIGHT.** Ms. Chegge-Kraszeski knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

    14. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

    (a)    Inform the Probation Office and the Court of all relevant facts and conduct;

    (b)    Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)    Respond to questions raised by the Court;

    (d)    Correct inaccuracies or inadequacies in the presentence report;

    (e)    Respond to statements made to the Court by or on behalf of Ms. Chegge-Kraszeski;

    (f)    Advise the Court concerning the nature and extent of Ms. Chegge-Kraszeski's cooperation; and

    (g)    Address the Court regarding the issue of Ms. Chegge-Kraszeski's acceptance of responsibility.

    15. **VOIDING OF AGREEMENT.** If either the United States or Ms. Chegge-Kraszeski violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

*Ack*
Defendant's
initials

Mary Lou Newberger
July 16, 2009
Page 8                          Re: Angella Muthoni Chegge-Kraszeski

16. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Ms. Chegge-Kraszeski in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Ms. Chegge-Kraszeski in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

                              CHARLES T. MILLER
                              United States Attorney

                        By:   _____
                              SUSAN M. ROBINSON
                              Assistant United States Attorney

SMR/das

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this eight-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____          27-7-2009
ANGELLA MUTHONI CHEGGE-KRASZESKI    Date Signed
Defendant

_____          27 July 2009
MARY LOU NEWBERGER                  Date Signed
Counsel for Defendant

                                    Ack
                                    _____
                                    Defendant's
                                    initials

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.                                       NO. 2:09-00132

**ANGELLA MUTHONI CHEGGE-KRASZESKI**

### STIPULATION OF FACTS

The United States and defendant Angella Muthoni Chegge-Kraszeski (hereinafter "Ms. Chegge-Kraszeski") stipulate and agree that the facts comprising the offense of conviction in the Indictment in the Southern District of West Virginia, include the following facts. The United States and Ms. Chegge-Kraszeski also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this case proceeded to trial.

1. During all relevant times, the State of West Virginia, its departments, agencies and subdivisions contracted with vendors to provide goods and services to the State of West Virginia. Payments to vendors for the goods and services were processed by the West Virginia State Auditor's Office through its office located in Charleston, West Virginia.

2. During all relevant times, Deloitte Consulting, LLP, doing business throughout the United States, was a vendor of the State of West Virginia under contract with the West Virginia Department

of Health and Human Resources ("DHHR") to operate its public welfare data systems. In the usual course of business, Deloitte Consulting, LLP received payment from the State of West Virginia by mail.

3. During all relevant times, Unisys Corporation, doing business throughout the United States, was a vendor of the State of West Virginia under contract to provide, among other things, administrative and claims processing services to various agencies of the State of West Virginia. In the usual course of business, Unisys received payment from the State of West Virginia by mail.

4. During all relevant times, TCF Bank located in Minneapolis, Minnesota was a financial institution as defined in 31 U.S.C. § 5312(a)(2), which was engaged in, and the activities of which affected interstate commerce.

5. In 2008, Ms. Chegge-Kraszeski was provided a fraudulent South African passport in the name of "Christina A. Clay" using a true photo of Ms. Chegge-Kraszeski. The fraudulent passport was created by at least one other individual known to Ms. Chegge-Kraszeski for the purpose of providing means of identification for Ms. Chegge-Kraszeski to assist that individual, and others known and unknown, in their scheme to defraud and to obtain money by fraudulent means.

6. In or about late December 2008 and early January 2009, acting at the direction of her co-conspirators and to further the

scheme, Ms. Chegge-Kraszeski created at least four corporate entities in the State of North Carolina using the false identity of Christina Ann Clay, including two corporations, Deloite (sic) Consulting Corporation and Unisyss (sic) Corporation, that had names similar to the legitimate vendors of the State of West Virginia.

7. On January 26, 2009, Ms. Chegge-Kraszeski, using the fraudulent South African passport and the incorporation documents from North Carolina, fraudulently opened a bank account in the name of Deloitte Consulting Corporation, account number xxxxxx9204, and a bank account in the name of Unisys Corporation, account number xxxxxx2292, at a branch of TCF Bank near Minneapolis, Minnesota. Ms. Chegge-Kraszeski assisted her co-conspirators in obtaining electronic access to these accounts.

8. Ms. Chegge-Kraszeski, assisted by and at the direction of her co-conspirators, mailed or caused to be mailed to the West Virginia State Auditor fraudulent "Company eVendor Agreement" forms. These forms directed the West Virginia State Auditor's Office to change the method of payment to the aforementioned legitimate vendors of the State of West Virginia from U.S. Mail to direct deposit by Automated Clearing House (ACH) to the fraudulent accounts established by Ms. Chegge-Kraszeski.

9. Specifically, with regard to the vendor Deloitte Consulting, LLP a fraudulent Company eVendor Agreement form was

received by the West Virginia State Auditor in Charleston, West Virginia on or about March 4, 2009. The Company eVendor Agreement directed the State of West Virginia to change the method of payment for Deloitte Consulting, LLP from U.S. mail to direct deposit by Automated Clearing House (ACH) into the fraudulent account number XXXXXX9204 at TCF Bank. As a result, monies due and owing by the State of West Virginia to Deloitte Consulting, LLP were diverted to the fraudulent account number XXXXXX9204 at TCF Bank controlled by Ms. Chegge-Kraszeski and her co-conspirators.

10. On or about March 19, 2009, the State of West Virginia wired $919,916, by an ACH transaction from at or near Charleston, West Virginia to account number XXXXXX9204 at TCF Bank. The money represented a legitimate payment to Deloitte Consulting, LLP for services provided to DHHR, which payment was fraudulently diverted to TCF bank account number XXXXXX9204 established by Ms. Chegge-Kraszeski.

11. Between March 26, 2009 and April 1, 2009, Ms. Chegge-Kraszeski traveled between Raleigh, North Carolina and Minneapolis, MN to perform a number of transactions concerning account number XXXXXX9204 at TCF Bank, which transactions included the following and which transactions involved funds derived from a specified unlawful activity:

| Date | Monetary Transaction | Amount/ Method | Recipient Bank/ Account Holder |
|---|---|---|---|
| 3/26/09 | Withdrawal and transfer | $92,410/ foreign wire | Standard Chartered Bank Nairobi, Kenya/ Accenture Global Enterprises Limited |
| 3/26/09 | Withdrawal and transfer | $89,716 foreign wire | CFC Stanbick Bank Nairobi, Kenya/ Accenture Global Enterprises Limited |
| 3/30/09 | Withdrawal and transfer | $95,994 foreign wire | Diamond Trust (K) Limited Nairobi, Kenya/SRI International Limited |
| 3/30/09 | Withdrawal and transfer | $95,818 foreign wire | NIC Bank Limited Nairobi, Kenya |
| 3/30/09 | Withdrawal and transfer | $93,556 foreign wire | CFC Stanbick Bank Nairobi, Kenya/ Accenture Global Enterprises Limited |
| 3/31/09 | Withdrawal and transfer | $70,082.26 check | Christina Clay |
| 3/31/09 | Transfer | $42,517.55 official bank check | Albert E. Gunga |
| 3/31/09 | Transfer | $27,550.71 official bank check | James Mwangi |
| 4/1/09 | Withdrawal and transfer | $87,686 foreign wire | Standard Chartered Bank Kenya Limited Nairobi, Kenya/ Accenture Global Enterprises Limited |

| Date | Monetary Transaction | Amount/ Method | Recipient Bank/ Account Holder |
|---|---|---|---|
| 4/1/09 | Withdrawal and transfer | $85,498 foreign wire | NIC Bank Limited Nairobi, Kenya/ Accenture Global Enterprises Limited |
| 4/1/09 | Withdrawal and transfer | $89,798 foreign wire | CFC Stanbic Bank Nairobi, Kenya/ Accenture Global Enterprises Limited |
| 4/1/09 | Withdrawal and transfer | $42,747 foreign wire | Standard Chartered Bank Kenya Limited Nairobi, Kenya/ Accenture Global Enterprises Limited |

12. Ms. Chegge-Kraszeski also wrote checks drawn on TCF Bank account xxxxxx9204 and made payable to Christina Clay in the total approximate amount of $35,000.00.

13. At the time she performed the transactions referred to in paragraphs 11 and 12 above, Ms. Chegge-Kraszeski knew that the funds in TCF bank account number XXXXXX9240 represented proceeds obtained from a criminal offense.

14. At the direction of her co-conspirators, Ms. Chegge-Kraszeski also fraudulently incorporated businesses under the names of Electronic Data System Corporation (sic) and Acenture Corporation (sic). Electronic Data Systems, Inc. was the true identity of a vendor of the State of Florida. Accenture, LLP was the true identity of a vendor of the State of Kansas. Ms. Chegge-Kraszeski established fraudulent bank accounts for each entity at

SunTrust Bank and Wachovia Bank near Raleigh, North Carolina, respectfully and provided electronic access to these accounts to her co-conspirators. Thereafter Ms. Chegge-Kraszeski engaged in acts intended to divert the payment of funds to these legitimate vendors of the States of Florida and Kansas into the fraudulently established bank accounts under her control and that of her co-conspirators.

This Statement of Facts does not contain each and every fact known to Ms. Chegge-Kraszeski and to the United States concerning Ms. Chegge-Kraszeski's involvement and the involvement of others in the commission of the offense to which Ms. Chegge-Kraszeski is charged and in other offenses, and is set forth for the limited purpose of establishing a factual basis for the guilty plea.

Stipulated and agreed to:

_____   29/7/2009
ANGELLA MUTHONI CHEGGE-KRASZESKI   Date
Defendant

_____   29 July 2009
MARY LOU NEWBERGER   Date
Counsel for Defendant

_____   7-29-2009
SUSAN M. ROBINSON   Date
Assistant United States Attorney